UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DENNIS ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:06-CV-00810 SNL |
| ) | |
| CITY OF SAINT LOUIS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM

**NOW BEFORE THE COURT** is Defendants' motion for summary judgment (Doc. #43, filed May 10, 2007). For the reasons outlined below, Defendants' motion (Doc. #43) is **HEREBY GRANTED IN PART** and **DENIED IN PART**. This cause shall proceed to trial, on a date to be hereafter determined.

## LEGAL STANDARD

Although summary judgment motions may be viewed as tools of "great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact," *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988); courts have repeatedly recognized the severity of summary judgment as a remedy, to be granted only in cases where the movant establishes his right to judgment with such clarity so as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977); *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976).

In passing on a motion for summary judgment, the court should review all facts supported by the record, and any logical inferences arising therefrom, in the light most favorable to the nonmoving party. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). *See also*, *e.g.*, FED. R. CIV. P. 56(e) (2007); *Robert Johnson Grain Co.*, 541 F.2d at 210 (conflicts of evidence must be construed in favor of non-movant). In that way, summary judgment should not be granted "unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." *Hindman v. Transkrit Corp.*, 145 F.3d. 986, 990 (8th Cir.

1998); *see also Mayer v. Nextel West Corp.*, 318 F.3d. 803, 806 (8th Cir. 2003) (citing *Keathley v. Ameritech Corp.*, 187 F.3d. 915, 919 (8th Cir. 1999)).

In support of their motion, Defendants offer a host of unauthenticated documents for the Court's consideration. While a summary judgment motion may be accompanied with certain evidentiary materials, their contents and authenticity must be first established. *See* FED. R. CIV. P. 56(e); *Stuart v. General Motors Corp.*, 217 F.3d 621, 636 n. 20 (8th Cir. 2000).

As an initial matter, Defendants (and to some extent Plaintiff) have wholly disregarded the Federal Rule's authentication requirement, and the Court must similarly disregard the subject documents. The Federal Rules were intended to hold a designated party accountable for a document's contents and authenticity. In that way, the Court cannot arbitrarily 'take counsel's word for it,' and presume the respective dates of origin, authors, and/or purposes of the same. *See Cordray v. 135-80 Travel Plaza, Inc.*, 356 F.Supp.2d 1011, 1015 (D.Neb. 2005) (Regardless of the essential nature or probative value of certain unauthenticated documents, they will not be permitted for summary judgment purposes.).

## **BACKGROUND**

For purposes of the instant motion, the Court adopts Plaintiff's version of the disputed facts, as follows. On the morning of September 29, 2005, during his confinement at the St. Louis City Medium Security Facility ("Facility"), Plaintiff was approached by a corrections officer, Defendant Willie McMorris. While Plaintiff was eating his breakfast, McMorris drew near and demanded that Plaintiff "get up and leave the dining [sic] room." Plaintiff stated that he was not finished eating, to which McMorris replied, "[g]et your [sic] black ass up now before I throw your black ass in the hole." Despite Plaintiff's compliance, McMorris instructed a fellow officer to record Plaintiff's information and escort Plaintiff to the Captain's office.

Upon reaching the Captain's office, McMorris "came within inches of [Plaintiff's] face and shouted: 'I should punch you in the face.' " Plaintiff told McMorris to "get out of my face," at which time McMorris "maliciously" struck Plaintiff, knocking him unconscious and causing permanent damage to his left eye. Plaintiff unequivocally states that he did not, at any time, touch, or attempt to touch, McMorris.

When Plaintiff regained consciousness, he was being handcuffed "so tightly that [his] wrist[s] were bleeding as [he] was being lifted from the floor." Plaintiff called out to Lt. Love, as

she descended the hallway, that he had "just been jumped on," and she instructed the officers to take Plaintiff to the medical unit. Once in the medical unit, Plaintiff received care and was photographed. In the presence of McMorris and the Facility's Chief of Security (Defendant Brown), Plaintiff stated that he wished to press charges against McMorris. Lt. Love immediately assured Plaintiff that McMorris would be investigated.

Soon thereafter, Plaintiff was placed in segregation for approximately forty-five days for threatening an officer.[FN1] Plaintiff insists that, in an effort to "cover up" their improper acts, McMorris and Brown conspired and/or participated in (i) fabricating the assault charges against him, (ii) concealing the true events, and (iii) placing Plaintiff in segregation until his injuries healed, during which time he was not permitted to have any visitors. Furthermore, despite numerous requests for information regarding the Facility's grievance policy and/or to obtain the necessary grievance forms; Plaintiff was disregarded, informed that no policy existed, and/or informed that an internal investigation was being conducted.

> **FN1**. After the altercation, McMorris filed charges against Plaintiff for assault, i.e. threatening an officer. According to McMorris, Plaintiff refused to leave the dining room when he was ordered, instead stating "that he would leave when he was 'good goddamn ready.'" When McMorris advised Plaintiff that he would be written up, Plaintiff challenged McMorris to "meet [him] in the gym" and "get ready" for him. Following a second write-up, Plaintiff "stood up and got in [McMorris's] face" and said, "I don't give a fuck nigger." As McMorris reached for his pepper spray, Plaintiff hit McMorris on the side of the head. McMorris then pushed Plaintiff away as a second officer forced Plaintiff to the floor and applied handcuffs. Although Plaintiff was subsequently escorted to the medical unit, McMorris indicates it was more of a procedural matter than anything else.
> For purposes of the instant motion, Defendants have not met their burden to dispel all conflicts of evidence. Furthermore, both Plaintiff and McMorris identify certain officers (i.e. "Officer Moore," "Lt. Love," etc.) that were present during the disputed events, and yet whose testimony is curiously absent from the record. For purposes of the instant motion, the Court has construed all conflicts in Plaintiff's favor.

As a result of the foregoing acts, Plaintiff suffered and continues to suffer, physical, mental, and/or emotional injuries. Contributing to his injuries, Plaintiff cites the actions and/or inaction of the Facility's supervisory officers. Specifically, Defendant Ball-Tyler, the Unit Manager, learned of the above incidents, yet failed to take any corrective action. Further, the Deputy Superintendent, Defendant Pollard-Buckingham, failed to implement the appropriate policies to control or guard against these, and similar, incidents.

## **DISCUSSION**

### **I. PRELIMINARY MATTERS**

#### A. *Plaintiff's Request for Production*

On May 11, 2007, Plaintiff filed a request for production (Doc. #47) wherein he sought production of "all records, memorandum [sic], notations, statements, summaries, and all other documents relating to this cause of action that [Defendants] obtained from or as a result of interviewing any person who purport to have knowledge of the matter relating to Petitioner's claim." Pursuant to the amended case management order (Doc. #39, filed Feb. 21, 2007), the deadline for completing discovery was May 1, 2007. On that basis, Defendants justifiably refused production of Plaintiff's untimely requests. Nevertheless, the Court reminds each party of its mandatory, running, duty to disclose and supplement certain documents,[FN2] and others timely requested.

> **FN**2. "[A] party must, without awaiting a discovery request, provide to the other parties: ... a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." FED. R. CIV. P. 26(a)(1)(ii).

#### B. *"Exhaustion" under the PLRA*

Defendants assert that Plaintiff's claims should be summarily dismissed in that Plaintiff failed to exhaust all administrative remedies prior to instituting this action. Plaintiff responds that his failure to exhaust should not bar his claims because Defendants failed to comply, and prevented him from complying, with the Facility's grievance procedures.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a) (2000), was enacted to streamline prisoner suits by, in part, requiring complainants to exhaust all available grievance remedies as a precursor to judicial intervention. *Jones v. Bock*, 127 S.Ct. 910, 914 (2007). In that way, no action may be brought "with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." 42 U.S.C. §1997e(a) (emphasis added); *Jones*, 127 S.Ct. at 918-19. Relevant here, Plaintiff's complaint must be dismissed insofar as the Facility was denied the opportunity to

first address and remedy the subject allegations. *See id*. at 923-26 (rejecting total-exhaustion rule).

Whether a complainant has "exhausted" the prison's administrative remedies is governed by the facility's requirements. *See Jones*, 127 S.Ct. at 922-23; *Abdul-Muhammad v. Kempker*, 486 F.3d 444, 446 (8th Cir. 2007) (citing *Jones*, 127 S.Ct. at 923). Exhaustion is an affirmative defense which must be pled and proven by defendant, and does not require plaintiff to make any special showing in his complaint. *Jones*, 127 S.Ct. at 920-23. Furthermore, where administrative remedies are *unavailable*, the PLRA's exhaustion provision will not bar a potential plaintiff from accessing the courts.[FN3] *Lyon v. Vande Krol*, 305 F.3d 806, 808-09 (8th Cir. 2002).

> **FN3**. *See, e.g., Nixon v. Sanders*, 243 Fed.Appx. 197, 199 (8th Cir. 2007) (case remanded to determine "availability," where plaintiff complained to prison officials that staff members were (i) ignoring his grievance forms and (ii) refusing to supply all necessary forms.); *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001) (remedies were "unavailable," where plaintiff completed first step of grievance process, and officials failed to respond); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (complaint reinstated where plaintiff's allegations "raise[d] an inference that he was prevented from utilizing the prison's administrative remedies.").
> *Compare, e.g., Lyon*, 305 F.3d at 809 (Plaintiff's subjective belief that the available remedies would be fruitless did not amount to misleading about their availability and/or restricting his right to complain where (i) plaintiff was aware of the procedure, and (ii) chose not to follow it.); *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (Summary judgment was proper for failure to exhaust where (i) plaintiff received a copy of the grievance procedure and (ii) he was not prevented from accessing the same, notwithstanding evidence that plaintiff was advised to make his healthcare complaints to healthcare personnel rather than the warden.).

Here, exhaustion requires Plaintiff to file (i) an Informal Resolution Request (IRR), (ii) an Inmate Grievance, and (iii) an Inmate Grievance Appeal. *See* Doc. #45: 2-3, filed May 10, 2007 (citing *Foulk*, 262 F.3d at 694). Defendants claim that, despite Plaintiff's knowledge about, and access to, the grievance system during all relevant times, Plaintiff failed to file any grievances or otherwise exhaust the Facility's administrative remedies.

Upon review of the record, the Court finds that the Facility's administrative remedies were "unavailable" to Plaintiff for purposes of grieving McMorris's alleged conduct. Specifically, Plaintiff alleges that he (i) informed officials that he wished to press charges against McMorris, and (ii) made numerous requests to officials to receive grievance forms and instructions for filing

5

the same. In contravention of these attempts, (i) Plaintiff's requests for information were either ignored or denied, or pacified with promises that his complaints against McMorris would be investigated, and (ii) he was intentionally and improperly segregated to prevent access to the grievance procedure and/or third parties.

The Court finds that the officials' acts in misleading Plaintiff, and/or impeding his access to the grievance procedure, rendered Plaintiff's administrative remedies "unavailable." *Jordan v. VanWinkle*, No. 3:04-CV-647, 2006 WL 2578982, at *4 (D.Ind. Sep. 5, 2006) (A remedy becomes 'unavailable' if prison employees "use affirmative misconduct to prevent a prisoner from exhausting.") (quoting *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006)). *See also Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (remedy "unavailable" where prison officials refused to supply the necessary grievance forms). Accordingly, the PLRA exhaustion requirement will not bar Plaintiff's claims alleging McMorris's violative conduct.

In contrast, the record does not support a finding that Plaintiff attempted to access the Facility's grievance procedure with regard to any other defendant or his/her respective conduct. By way of example, there is no evidence that Plaintiff attempted to grieve the alleged conspiracy, failure to train/supervise, or due process/equal protection violations of Defendants Ball-Tyler, Brown, and/or Pollard-Buckingham. Accordingly, Plaintiff's claims as against the latter Defendants shall be dismissed. *See Langford v. Ifediora*, No. 5:05CV00216, 2007 WL 1427423, at *4 (D.Ark. May 11, 2007). *See also Booth v. Churner*, 532 U.S. 731 (2001) (Prisoners must utilize any available prison grievance procedure before they may file a § 1983 claim regarding conditions of confinement.).

## II. CLAIMS AGAINST DEFENDANT McMORRIS

Turning to the remaining claims, Plaintiff alleges that McMorris's conduct amounted to (I) violations of his constitutional right, and (II) common law offenses in tort.

### A. *CONSTITUTIONAL VIOLATIONS*

Pursuant to 42 U.S.C. § 1983,[FN4] a plaintiff who has been deprived of his Constitutional rights may bring civil action against State actors. *West v. Atkins*, 487 U.S. 42, 48 (1988).

> **FN4**. "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. §1983 (2000).

To bring a claim under Section 1983, the Court must find (i) a Constitutional violation, and (ii) a right so "clearly established such that a reasonable official would understand that his 'conduct was unlawful in the situation he confronted.' "[FN5] *Tarpley v. Stepps*, No. 4:05-cv-00573, 2007 WL 844826, at *3 (D.Mo. Mar. 19, 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

> **FN5**. As to McMorris's qualified immunity defense, while government officials performing discretionary functions are generally entitled qualified immunity from civil damages suits challenging the same, immunity will not protect an official who violates "clearly established constitutional or statutory rights of which a reasonable person would have known..." *Trapnell v. Ralston*, 819 F.2d 182, 184 (8th Cir. 1987) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)).

#### i. *First Amendment Right to Access the Courts*

Under the First Amendment, inmates are entitled to petition for redress under established prison grievance procedures. *Dixon v. Brown*, 38 F.3d 379 (8th Cir. 1994) (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989)). To prove a violation hereunder, Plaintiff must prove that McMorris acted with some intentional motivation to restrict his access to the courts. *Morris v. City of Chillicothe*, 512 F.3d 1013, 1020-21 (8th Cir. 2008). *See Sprouse*, 870 F.2d at 452 (" 'intentional obstruction of a prisoner's right to seek redress of grievances' is the type of conduct section 1983 is intended to remedy." ) (quoting *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988)).

Plaintiff alleges that McMorris intentionally impeded his access to the Facility's grievance system by (i) failing to instruct and/or provide information about the procedure, (ii) seeking dismissal of the instant action based on Plaintiff's failure to exhaust, and (iii) conspiring and/or participating in filing false charges against Plaintiff and subsequently placing him in segregation.

*See*, *e.g.*, *Morris*, 512 F.3d at 1020 (The right to access the courts extends to situations where the claimant "has been denied meaningful access by some impediment put up by the defendant."); *Scheeler*, 402 F.3d at 830 (same) (citing *Alexander v. Macoubrie*, 982 F.2d 307, 308 (8th Cir. 1992)).

The Court finds McMorris's alleged conduct, in falsely accusing and segregating Plaintiff, violatively impeded Plaintiff's access to the grievance process. *See Sprouse*, 870 F.2d at 452 ("[W]hat is at stake is a prisoner's right of access to an existing grievance procedure without fear of being subjected to a retaliatory disciplinary action."). *See also Dixon*, 38 F.3d at 379.

### *ii. Eighth Amendment Prohibition Against Cruel and Unusual Punishment*

The right to be free from cruel and unusual punishment affords prisoners "adequate food, clothing, shelter, and medical care, and ... 'reasonable measures to guarantee [their] safety.' " *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1992)). To state a claim under the Eighth Amendment, Plaintiff must prove that McMorris (i) used "excessive force," *Farmer*, 511 U.S. at 832 (citing *Hudson v. McMillian*, 503 U.S. 1, 5-7 (1992) (in turn citing *Whitley v. Albers*, 475 U.S. 312 (1986)); and (ii) applied such force "maliciously and sadistically for the very purpose of causing harm," *id*. at 835-36.

For purposes of the instant motion, the Court finds McMorris's conduct (i.e. striking Plaintiff with such force as to render him unconscious, and handcuffing Plaintiff in a manner so as to cause his wrists to bleed) excessive and malicious. While prison officials must often respond " 'in haste, under pressure, and frequently without the luxury of a second chance,' " *Farmer*, 511 U.S. at 835 (quoting *Hudson*, 503 U.S. at 6); absent any evidence that Plaintiff's conduct was riotous or otherwise unmanageable, the Court finds the excessive nature of the alleged conduct to fall within the province of a jury.

*See Farmer*, 511 U.S. at 832-33 ("The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and it is now settled that 'the treatment a

prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment,' " (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *and Helling*, 509 U.S. at 31).

### *iii. Fourteenth Amendment Right to Substantive Due Process*

The Due Process Clause protects against government officials " ' "abusing [their] power, or employing it as an instrument of oppression." ' " *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citing *Collins v. Harker Heights*, 503 U.S. 115, 126 (1992) (in turn quoting *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 196 (1989)). To prevail here, Plaintiff must prove that McMorris's conduct (i) "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," *Lewis*, 523 U.S. at 847, 852-53 (citing Gluckberg, )); and (ii) "violated one or more fundamental rights," *Clemmons v. Armontrout*, 477 F.3d 962, 965 (8th Cir. 2007) (quoting *Moore v. Briggs,* 381 F.3d 771, 773 (8th Cir. 2004)).

First, while the Court is disturbed by the alleged conduct at issue, it does not appear to give rise to substantive due process protection. *See Lewis*, 523 U.S. at 846 ("Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense,' ") (quoting *Collins*, 503 U.S. at 129).

Further, the Constitutional rights at stake under the instant facts include (i) the right to be free from punishment/ adverse action without due process, and (ii) the right to access the courts. Given the Courts' reluctance to expand the application of substantive due process, Plaintiff's claims would be more appropriately addressed by alternative Constitutional provisions. *See Collins*, 503 U.S. at 125 (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225-26 (1985)). Evaluating Plaintiff's claims under the First and Eighth Amendments will afford him comparable benefit and protection. *See Whitley*, 475 U.S. 314:

> ...the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners . . . where the deliberate use of force is challenged as excessive and unjustified. It would indeed be surprising if, in the context of forceful prison security measures, "conduct that shocks the conscience" or "afford[s] brutality the cloak of law," and so violates the Fourteenth Amendment, were not also punishment "inconsistent with contemporary standards of decency" and " 'repugnant to the conscience of mankind,' " in violation of the Eighth." *Id*. at 327 (internal citations omitted).

9

Accordingly, Plaintiff's claim for substantive due process under Count I is dismissed.

### *iv. Fourteenth Amendment Right to Procedural Due Process*

Next, Plaintiff alleges that McMorris's intentional and improper acts, absent any procedural safeguards, violated his procedural due process rights.

For purposes of the instant motion, the Court finds that (I) McMorris's conduct in filing false charges against Plaintiff and misrepresenting the disputed events, and (ii) Plaintiff's 45-day segregation amount to deprivations of significant liberty interests. *See Terrell v. Godinez*, 966 F.Supp. 679, 682-83 (D.Ill. 1997). *See also id.* at 682 (citing *Sandin,* 515 U.S. at 485-86 (discussing segregation)); *White v. McKinley*, Nos. 07-1002, 07-1166, 2008 WL 495637, at *5 (8th Cir. Feb. 26, 2008) (violation of due process where officer deliberately misrepresented and/or failed to preserve evidence). Furthermore, under the alleged circumstances, a reasonable officer in McMorris's shoes would have known that his conduct was unlawful. *See White*, at *5.

Accordingly, Plaintiff's claim for violation of procedural due process as against McMorris shall survive summary judgment.

### *v. Fourteenth Amendment Right to Equal Protection*

Absent a compelling state interest, racial discrimination in the administration of prisons violates the Equal Protection Clause of the Fourteenth Amendment. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Lee v. Washington*, 390 U.S. 333 (1968)). Upon review of the record, there is insufficient evidence to support a finding that McMorris's conduct (i) was racially motivated and/or caused the discrimination,[FN6] or (ii) was disproportionately directed at black inmates, and/or that white inmates were treated more favorably in the same regard.[FN7]

Accordingly, Plaintiff's equal protection claim under Count VI is dismissed.

> **FN6**. *See Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)).
>
> **FN7**. *See Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 266 (1977) (disparate impact alone is generally insufficient to state an equal protection claim). *See also Washington v. Davis,* 426 U.S. 229, 239 (1976) ("The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race.").

### B. *TORT OFFENSES*

The instant complaint does not identify whether Plaintiff intended to assert his claims under State law. Nevertheless, in affording liberal construction, the Court turns to Plaintiff's claims sounding in common law tort. Here, it appears that Plaintiff seeks redress under common law theories of assault, battery, and extreme emotional distress.

#### *i. Assault and Battery*

To state a claim for assault under Missouri law, plaintiff must show (i) intent to cause bodily harm or offensive contact, or apprehension of either; (ii) conduct indicating such intent; and (iii) a resulting apprehension of bodily harm or offensive contact on the part of the plaintiff. *Phelps v. Bross*, 73 S.W.3d 651, 656 (Mo.App. 2002) (quoting M.A.I. 23.01 (1981)).

To state a claim for battery, plaintiff must prove (i) intent to cause an offensive bodily contact with another, and (ii) actual contact. *Phelps*, 73 S.W.3d at 656 (citing *Geiger*, 974 S.W.2d at 516).

Construing the record in the light most favorable to the non-movant, Plaintiff's common law claims for assault and battery survive summary judgment.

#### *ii. Extreme Emotional Distress*

To state a claim for extreme emotional distress, Plaintiff must demonstrate (1) extreme and outrageous conduct, (2) an intentional or reckless state of mind, and (3) resulting severe emotional distress which then caused physical injury. *Dunham v. City of O'Fallon, Mo.*, 945 F.Supp. 1256, 1262 (D.Mo. 1996). The emotional distress must be "medically diagnosable and medically significant." *Hendrix v. Wainwright Indus.*, 755 S.W.2d 411, 412 (Mo.App. 1988) (internal quotation omitted).

On these facts, while the Court is disturbed by McMorris's alleged conduct, it does not appear to have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Gibson*, 688 S.W.2d at 7(quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965). Furthermore, the record fails to evidence that Plaintiff sought medical attention for any psychological or emotional difficulty, and/or physical injury resulting therefrom. Accordingly, Count VII shall be dismissed.

**I**n accordance with the preceding analysis, the Court finds as follows:

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment be, and is, **HEREBY GRANTED** *IN PART*. Plaintiff's Counts Two (II) and Four (IV) shall be **DISMISSED** *as they relate to* Defendants Brown, Ball, and Buckingham. Plaintiff's Count Five (V), Six (VI), Seven (VII), and Eight (VIII) shall be **DISMISSED** *in their entirety*.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment be, and is, **HEREBY DENIED** *IN PART*. Counts One (I),[FN8] Two (II), Three (III), and Four (IV) *as against Defendant McMorris only*, shall survive summary judgment.

> **FN8**. Count I is Dismissed as against McMorris insofar as it relates to the substantive due process claim, and shall proceed only as to the cruel and unusual punishment claim. *See supra.*

**D**ated this 12th day of March, 2008.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**